Callahan, public adm'r, vs. Griswold.

9  784<br/>41a 555

---

CALLAHAN, PUBLIC ADM'R. VS. GRISWOLD.

1. The decision of a county court upon a petition to sell land of an estate for the payment of debts, is not to be regarded a *res adjudicata*.

2. The county court may order the public administrator to take possession of an estate, in any case in which no administration has been taken out under the general law.

3. The judgment of a court of competent jurisdiction cannot be impeached in a collateral proceeding by a party to the same; but a stranger may show that the judgment was obtained by fraud or collusion, and is thus void as to him.

4. Upon a petition by an adm'r to have the land of an estate sold for payment of debts, a party interested in the land may resist the application and show that the judgments were obtained by fraud and collusion.

ERROR to Warren Circuit Court.

LEONARD & BAY for Plaintiff.

1. The judgments of the circuit court of Franklin county, allowing the demands of Alexander McKinney against the estate of Robert Mc-

Kinney, are conclusive in this proceeding. The 8th section of the 4th article of the act of 1835 concerning "Administration," gives to the order of allowance of a demand against an estate, the "force and effect of a judgment;" and this is an attempt to impeach the judgment of a court of competent jurisdiction in a collateral proceeding; Montgomery vs. Farley & Robinson, 5 Mo. R. 233; Hawly vs. Mancius, 7 J. C. R. 174; Homer vs. Fish, 1 Pick. 435.

2. The defendant in error, Griswold, is not only attempting to impeach the judgment of a court of competent jurisdiction in a collateral proceeding, but without making Alexander McKinney, to whom the judgments belonged, a party to this proceeding. Admitting that the judgments could be avoided in a proceeding like this, yet it would be necessary to make Alexander McKinney a party, before his rights could be affected or adjudicated upon.

3. Even if the judgments could be set aside in a collateral proceeding, without giving any notice to the party to whom the judgments belonged, yet there is no evidence of fraud, either on the part of the administrator or Alexander McKinney. Both believed the demands to be just, and the only evidence offered is the assertion of Griswold in his notices, which were clearly illegal and irrelevant.

4. The evidence offered on the part of Griswold should have been excluded from the consideration of the court as impertinent and irrelevant. Griswold does not stand in the light of an heir, but as a mere speculator, as appears from his own evidence.

5. The writings purporting to be evidence of Hughes, the former administrator, and Alexander McKinney, taken in another proceeding, should have been excluded. A party to a proceeding cannot be compelled to testify; Greenleaf on Ev. 398.

6. The application for the order of sale of the real estate was made in strict conformity with the provisions of the administration law. See art. 3rd, sects. 8, 9, 10, 12, act of 1835, concerning administration.

7. The county court had full power to order the public administrator to take possession of the estate of Robert McKinney. See act concerning "Public Administrations," statutes of 1835, p. 64, 65, sec. 8. But no appeal lies from an order of the county court directing the public administrator to take possession of an estate, or a refusal to rescind such an order. Besides, Griswold was a stranger, and had no right to object, and indeed has taken no appeal from the order of the county court.

8. The questions now before this court never have been adjudicated between the parties. If the refusal of the county court to order a sale

of real estate, on the application of the administrator, is to be considered as coming within the rule, *res judicata pro veritatem accipitur*, then the rights of creditors would be entirely lost by a mere informality or illegality of proceeding, in an act purely ministerial on the part of the administrator.

The county court do not adjudicate upon the rights of the parties, but merely refused to grant an order of sale upon grounds not affecting the ultimate rights of the parties. See the case reported in 6 Mo. Rep. 248-9.

CARTY WELLS, for Defendant.

For the defendant I make the following points :

1. The public administrator had no power or authority to act as administrator in this estate, it not coming within the provisions of the statute authorizing him to act. See Revised Laws of 1835, p. 65, sec. 8.

2. If said administrator had power to act, the sale ought to have been ordered for several reasons : 1st. Because this very question had been before fully adjudicated between the parties, and that decision is a bar to this proceeding. See 1st Pirtle, 86-7, and cases cited. For right of him to defend, 6 John. Ch. C. R. 360. 2nd. Because the debts, if any in fact existed, were not such as that land in Missouri should be sold to pay them ; Story's Confc. Laws.

3. There had been an administration in the State of Indiana, where Robert McKinney resided and died. This was the principal administration. There being no personal property in Missouri, no letters could be lawfully granted by the courts of this State. See Revised Code, 2 sec. of Adm'r. law, p. 41.

If however, letters could lawfully be granted in Missouri, the administrator was only auxiliary to those in Indiana, and there being no resident creditors in this State, the fund should first go to the distributees, if resident here ; if not, it should have been sent to the principal administrator for distribution there, according to the laws of that State; under such circumstances, land could not lawfully be sold. See Story's conflict of laws.

4. The demands allowed in Franklin circuit court, were barred by limitation.

5. Their allowance was obtained, and suffered by gross fraud and misconduct, on the part of Alexander McKinney, and the administrator of the estate. To prove this, I rely on the following facts:

1. McKinney's object was to get the land, and not to collect debts due him from the estate; and with this view he purchased of a part of the heirs, and thereby admitted their title to be valid. Finding that he could not accomplish his purpose in this way, he wrote to his brother in Indiana to buy up those old debts for the purpose of using them, to divest the heirs of their title.

2. These debts were not judgments, or even allowances by the probate court of Indiana. They were merely reported debts.

3. There is no evidence that he ever bought them, or that his brother bought them, either from the true owner, or from any other person.

4. There is not even evidence that the owners were alive, at the time they were set up as debts here.

5. One of them was allowed to Wallace adm'r; yet he sues here for it in Wallace's name, as his individual debt.

6. Even if they had been judgments in the State of Indiana, lawfully allowed against the administrator there, and still remained in full force, still the administrator Hughes, in this State, was not bound by them, he having been no party there, and representing a different portion of the estate of the deceased.

7. Yet the administrator here, at the request of McKinney, (who was not a creditor or a distributee,) obtained letters here for the avowed purpose of aiding and assisting McKinney in having these old claims allowed in this State, in order to sell the land.

8. It is the duty of an administrator to defend all suits brought against the estate which he represents, and especially all illegal demands. Yet in this case, Hughes not only fails to defend, but actually employs an attorney, and directs him "*to see that the claims are fairly allowed,*" and this after he has had notice of the character of the claims.

9. The administrator employs one lawyer, and McKinney another, and McKinney pays both, and they appear before the court, and have judgment entered without observing even the forms of the law.

10. He refuses to appeal, although urged to do so, by one deeply interested.

11. The judgment when allowed, is in its terms, only a judgment to be paid out of the *assets in the hands of the administrator.*

These things clearly establish fraud and collusion between the claimant and the administrator, and the judgment ought not to be enforced.

NAPTON, J., delivered the opinion of the court.

This was an application to the county court of Warren county, by the public administrator of said county, having in charge the estate of Robert McKinney deceased, for the sale of certain real estate, belonging to the heirs of said McKinney, to satisfy certain claims which had been previously allowed against the estate. Griswold, who had purchased the interest of several of the heirs, appeared in the court, and objected to the sale. Griswold also moved the court to rescind the order directing the public administrator to take charge of this estate, but the motion was overruled. The objections of Griswold to the sale were also overruled, and the land was ordered to be sold. From this decision of the county court, Griswold appealed to the circuit court, where, upon a trial *de novo*, that court refused to make the order, and to this judgment of the circuit court the public administrator brings his writ of error.

It appears from the bill of exceptions, that Robert McKinney died in Indiana in 1823, never having resided in this State, but owning a tract of land in Warren county. The probate court of Washington county, Indiana, granted administration of his estate to Sarah McKinney, and Hugh Kelso. On the 18th Nov'r. 1824, the said administrators filed their bill in the chancery court of said county of Washington, alleging that the estate was insolvent, and praying for the appointment of commissioners to settle said estate, according to the statute laws of that State, regulating the settlement of insolvent estates. On the 7th April, 1827, the said commissioners made their report, in which they set out all the debts of the estate to be $1856 74, and report the assets as amounting to $127 62, and declare a dividend accordingly, of two cents and some mills to the dollar. On the 8th Dec. 1828, the report of the commissioners was approved. In the meantime, and prior to the grant of letters in Missouri, eight of the children of said Robert McKinney sold their interests in the land in Warren county to Frederick Griswold, the defendant in error, and two of them sold to Alexander McKinney.

Several of the claims against the estate of Robert McKinney, which were allowed by the commissioners in Indiana, amounting to about sixteen hundred dollars, were purchased by Alexander McKinney, who thereupon procured James Hughes to take out letters of administration in Warren county, in this State. There was no other property of Robert McKinney in Warren county, except the land heretofore mentioned. In 1836, Alexander McKinney presented these claims to the

county court of Warren county for allowance, but no allowance being made by that court, he appealed to the circuit court for said county, and the judge of that court having been of counsel in the cause, the venue was changed, first to St. Charles, and subsequently to Franklin. At the February term, 1838, of the Franklin circuit court, these claims were allowed, and the administrator was ordered to pay them out of the assets in his hands belonging to said estate. These judgments were afterwards presented to the county court of Warren county, and by that court ordered to be paid in the fifth class. Hughes, the administrator, then filed his petition, praying for an order for the sale of the real estate, for the purpose of satisfying these demands. The county court refused to order the sale, and Hughes appealed to the circuit court, where the judgment of the county court was affirmed. From this judgment, an appeal was taken to the supreme court, and this court affirmed the judgment of the circuit court, it not appearing on the record how the Franklin circuit court had gotten jurisdiction over the claims. See Hughes, admr. of McKinney v. Griswold, 6 Mo. R. 245.

On the 17th Nov., 1841, Hughes resigned his letters of administration, and the county court ordered Berton Callahan, public administrator, to take charge of said estate of Robert McKinney, deceased. On the 22d Feb'y, 1842, Callahan filed his petition in the county court of Warren county, to sell the real estate of said McKinney, when the proceedings took place as heretofore stated, resulting in a judgment, to which this writ of error has been sued out.

The objections of Griswold to the application of the administrator, were numerous, but seem to be chiefly based upon two points; first, the former adjudication in the case of Hughes, admr. v. Griswold; and second, fraud and collusion in obtaining the Franklin judgments. In support of his objections, he offered in evidence:

1. Deeds from eight of the heirs of Robert McKinney to himself, conveying all their interest in the land, and title bonds from the two remaining heirs to Alexander McKinney, all of which were executed prior to the grant of administration to Hughes in 1834.

2. A notice to Hughes, adm'r &c., dated Feb'y 1836, to defend the claims brought by A. McKinney, against said estate, and directing said Hughes to employ counsel, take appeals, &c.

3. Another notice, dated March 3, 1838, advising said Hughes of his interest in the land, and that the several allowances made by the Franklin circuit court, were illegal, setting out at large various objections to said allowances, and urging said Hughes to take bills of exceptions to the opinions of said court, and appeals and writs of error, if necessary,

and binding himself to pay all costs and charges attending such defence.

4. The testimony of said Hughes, former adm'r, &c., of Alexander McKinney, which is substantially as follows:

Hughes states that he took out letters of administration at the request of Alexander McKinney, in order that McKinney might get his claims allowed, and have the land of Robert McKinney sold for the payment thereof; that he never employed counsel to defend against these claims, until the court in Franklin, and never at any time directed any defence to be made; that he believed them to be just, having known several of them himself, for upwards of twenty years; that he wrote to an attorney to attend to the suits in Franklin, and see that the claims were fairly allowed; that he sent his letter to said attorney by Alexander McKinney; that he did not attend himself, nor take any appeal from the decision of the Franklin circuit court.

Alexander McKinney testified, that he was present at the Franklin circuit court, when these claims were allowed; that the only evidence offered in support of them was a copy of the records of the probate court of Washington county, Indiana, that the administrator had counsel there; that he had bore a letter from the administrator to said attorney; that he had paid said attorney his fee; that said attorney did not plead the statute of limitations, nor in any manner oppose the allowance of the claims; that said attorney told the court he thought the claims just and legal, and that they ought to be allowed. This witness further stated, that he knew the heirs of Robert McKinney, deceased; that he bought of one of said heirs her interest in the land in Warren, before she was of age, and that after she became of age, she had conveyed to Griswold; that said Griswold got another deed by fraud, which he could prove; that there was an agreement between him and Griswold to buy out all the interests of the heirs, and at that time witness knew of no debts against the estate, and supposed Griswold knew of none; that Griswold acted *underhandedly* with him, and he refused to have anything more to do with him; that he then wrote to his brother-in-law in Indiana, to learn the condition of R. McKinney's estate, and hearing that there were debts against it, he got his brother-in-law to buy them for him; and that he afterwards procured Hughes to administer, in order that he might get them allowed, and have the land sold, as it was his intention, if possible, to get the land.

This testimony was objected to as incompetent and irrelevant, but it was admitted, and exceptions were taken to its admission.

1. It is contended by the defendant in error, that the judgment in the

case of Hughes, adm'r vs. Griswold, which was affirmed by the Supreme Court in 1840, is a bar to any further proceedings on the subject matter therein adjudicated. We do not regard the refusal of the county court of Warren, as a judgment of this character. It may be questioned whether the principle of *res adjudicata*, applies to those decisions which are made by courts, acting in a summary way upon an application addressed to their discretionary jurisdiction. In such cases if the facts upon which relief is claimed, be the same upon a second application that they were in the first, by analogy to proceedings in the ordinary course of judicial investigation, parties will generally be held precluded by the result of the first application. Scherman vs. Weatherhead, 1 East. 537 ; Greatheat vs. Bromley, 7 Durn. & East. 451. But it seems that where it subserves the purposes of justice, courts will hear the second application and decide it differently, without being bound by the former adjudication. Sampson vs. Hart, 13 John. R. 63. In the case now under consideration, the record does not show what facts were before the court when the application was first rejected by the county court of Warren. It seems that the cause when up in this court turned entirely upon the absence of record proof to show the jurisdiction of the circuit court of Franklin county over demands against the estate of R. McKinney, and that the case was not at all decided on its merits. The decision of the county court may have been based upon the same, or similar grounds, and therefore would be no bar, even though the evidence was in other respects substantially the same on the second application, as it had been upon the first.

2. The right of the county court of Warren to order the public administrator to take charge of the land of R. McKinney, deceased, has been questioned. The objections to this power, are founded upon the phraseology of the eighth section of the act concerning public administrators. This section does not in terms embrace a case like the present ; but we understand the general scope of that statute to comprehend every case in which letters have not been taken out under the general law of administration. At all events, no inconvenience is likely to arise from such a construction, as the creditor himself could, under the general law, have administered, and his impartiality or responsibility is not so well secured as that of the public administrator, who is an officer appointed by law, and has to give bond and security for the faithful discharge of his duties. We pass this objection to consider the main point in the case, which is :

3. That the Franklin judgments were obtained by collusion and fraud, and were, therefore, properly disregarded.

Callahan, public adm'r, vs. Griswold.

Previous to examining this point, a question has been raised relative to the competency and relevancy of the testimony of Hughes and A. McKinney, which it is proper to dispose of.   The record is exceedingly confused and imperfect, adopting as it appears by consent the bill of exceptions taken in the county court, as a bill of exceptions to the opinions of the circuit judge.   It does not appear how the testimony of Hughes and McKinney was taken, whether by deposition or orally; but we presume it was voluntarily given.   McKinney being substantially a party, could not have been compelled to testify, but his testimony having been taken, and that of Hughes also, and no objections being made to it except on the grounds of incompetency or irrelevancy, we are of opinion it is competent *against them*, and very relevant to the matter in dispute.

The judgment of a court of competent jurisdiction cannot be impeached collaterally, in another court, in an action between the same parties, and upon a point once put in issue. The party must apply to the court which pronounced the judgment to have it vacated.   This principle does not prevent a party who was a stranger to the proceeding, and had no opportunity of defending against such judgment, from showing that it was procured by fraud, and that an unconscientious use is about to be made of it.   In a suit against an administrator, if he plead judgments outstanding, the plaintiff may reply that the judgments were obtained by fraud.   2 Ch. Pl. 637 ; 1 Ph. Ev. 346.   Griswold was no party to the proceeding in Franklin county ; he had no right to interfere until an application was made to the county court, of Warren to order the sale of the land.   In that proceeding it was the duty of the administrator to notify the heirs, and they are expressly authorized and invited to come in and show cause, if any they have, why the land should not be sold pursuant to the petition.   Representing the interests of the heirs, Griswold had a right to appear and protect his interests ; and to effect this, he could show that the Franklin judgments, for which the land was proposed to be sold, were fraudulent and void.

The question then remains, was there any evidence to warrant the circuit court of Warren county, upon the trial of the case appealed from the county court, in pronouncing these judgments fraudulent and void.   A bare statement of the facts is, we think, sufficient to show that the court did not come to a wrong conclusion.

McKinney, who is disappointed in getting the title to this land in Warren county from the heirs of R. McKinney, and who believes himself to have been defrauded by Griswold in the matter, considers Gris-

wold's *underhanded* proceedings as a justification of his efforts to procure the title in another mode. It is not material in this case, whether this justification be a good one, legally or morally. Through the instrumentality of a friend in Indiana, he purchases certain claims which had been proved before commissioners appointed to settle the insolvent estate of R. McKinney, in the year 1827, and to have them enforced here, he gets Hughes to administer in Warren county. The claims are presented to the county court of Warren county, and rejected; upon appeal from that court to the circuit court, the cases are transferred to the circuit court of Franklin county, where they are ultimately disposed of. The administrator, instead of making a *bona fide* defence, knowing, as he states himself, that they were claims of *twenty years* standing, employs an attorney to "*see that they are fairly allowed ;*" and Alexander McKinney, who is prosecuting these claims, pays this attorney his fee. The attorney seems in fact to have regarded himself as the attorney of McKinney, and not of the administrator, for we find him assuring the court that the claims are just, and ought to be allowed. The only evidence presented to the court was these Indiana records, which were no evidence whatever against the administrator here; but the court gives judgment against the administrator, at the suggestion of the administrator's counsel. No bills of exceptions are taken, and no appeal or writ of error. No plea of the statute of limitations was pleaded. This state of facts shows, as we apprehend, a complete perversion of the legitimate purposes of judicial proceedings, to attain an object entirely foreign to the apparent purposes of the actors. To uphold such proceedings, would be a reproach upon the administration of justice, and a fraud upon the law, which provides for the settlement of estates.

We look upon the judgments in the Franklin circuit court, as in fact, judgments by confession, and collusion, between the administrator and the plaintiff, McKinney. As such they were properly disregarded.

Judgment affirmed.